# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

963

KA 11-00702

PRESENT: SCUDDER, P.J., FAHEY, SCONIERS, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                         MEMORANDUM AND ORDER

PERNELL A. FLANDERS, DEFENDANT-APPELLANT.

---

JOHN J. RASPANTE, UTICA, FOR DEFENDANT-APPELLANT.

PERNELL A. FLANDERS, DEFENDANT-APPELLANT PRO SE.

SCOTT D. MCNAMARA, DISTRICT ATTORNEY, UTICA (STEVEN G. COX OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Oneida County Court (Barry M. Donalty, J.), rendered January 11, 2011. The judgment convicted defendant, upon a jury verdict, of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree and reckless endangerment in the first degree.

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), assault in the first degree (§ 120.10 [1]) and reckless endangerment in the first degree (§ 120.25). The evidence at trial established that, on the date in question, defendant and a passenger in his vehicle approached the victim and his fiancée. A physical altercation ensued during which defendant struck the victim with a .380 caliber semi-automatic pistol. Defendant then shot the pistol at the victim and in the vicinity of the victim's fiancée. Defendant returned to his vehicle to obtain a second firearm, i.e., a .22 caliber rifle, which he then used to shoot at the victim, in the vicinity of the victim's fiancée. The victim sustained multiple gunshot wounds to the neck, chin, shoulder and leg. With respect to the assault and reckless endangerment charges, the indictment alleged that defendant committed those offenses with "a .380 semi-automatic pistol *and* a .22 rifle" (emphasis added).

During its charge, County Court instructed the jury that it was alleged that defendant committed assault in the first degree by intentionally injuring the victim with a "380 semi-automatic pistol *and* a 22 caliber rifle" (emphasis added). The court further instructed the jury that it was alleged that defendant committed

reckless endangerment in the first degree by firing "a 380 semi-automatic pistol *and* a 22 rifle in the direction of [the victim's fiancée]" (emphasis added).  The jurors sent a note asking if they must believe that both firearms were involved in order to find defendant guilty of the assault and reckless endangerment charges.  The court instructed the jury that it "must be proven to your satisfaction beyond a reasonable doubt, that either of the weapons were involved or both, as long as you find that there was a deadly weapon involved."  The jury thereafter returned a verdict of guilty on all counts charged in the indictment.

Defendant now contends that the court's instruction to the jury constructively amended the indictment, rendering it duplicitous.  We reject that contention.  It is well established that, " '[w]here an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together and charge the defendant with having committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the commission of the others' " (*People v Charles*, 61 NY2d 321, 327-328).  Contrary to the position of the dissent, we conclude that the evidence at trial established that the multiple shots fired from two separate firearms "constitute[d] a single uninterrupted assault rather than a series of distinct criminal acts . . . , and the assault 'occurred over a short time frame, without apparent abeyance, and was triggered by a single incident of anger' " (*People v Snyder*, 100 AD3d 1367, 1367, *lv denied* 21 NY3d 1010, quoting *People v Hines*, 39 AD3d 968, 969-970, *lv denied* 9 NY3d 876; *cf. People v Bauman*, 12 NY3d 152, 155-156; *People v Casado*, 99 AD3d 1208, 1209, *lv denied* 20 NY3d 985; *see generally People v Alonzo*, 16 NY3d 267, 270).  "The fact that more than one dangerous instrument allegedly was used by the defendant[], and more than one [shot] was [fired] causing the [victim] several injuries, does not transform this single criminal incident into multiple assaults or acts of [reckless endangerment] which must be charged by separate counts" (*People v Kaid*, 43 AD3d 1077, 1080; *cf. People v Negron*, 229 AD2d 340, 340-341).  We respectfully disagree with the position of the dissent that there were separate impulses with an abeyance between them.  Rather, the evidence established that defendant assaulted the victim and his fiancée in an attempt to seek revenge for the fiancée's alleged assault on defendant's sister.  There was one motive and one impulse:  to seek revenge.  We see no distinction between a situation in which an assaulting defendant takes the time to reload one weapon and one in which the assaulting defendant takes the time to obtain a second weapon with the single impulse of continuing the ongoing assault.

With respect to the count of reckless endangerment in the first degree, the conduct encompassed by that count was the act of endangering the life of the victim's fiancée, who was in the vicinity of the victim the entire time defendant was shooting at the victim.  "Where . . . a crime by its nature as defined in the Penal Law may be committed either by one act or by multiple acts and can be characterized as a continuing offense over time, the indictment may charge the continuing offense in a single count" (*People v First Meridian Planning Corp.*, 86 NY2d 608, 615-616).  Under the

circumstances of this case, the crime of reckless endangerment "involved a continuing offense" and could therefore encompass multiple acts in one count without being duplicitous (*People v Hernandez*, 235 AD2d 367, 368, *lv denied* 89 NY2d 1012).  In our view, the fact that the multiple shots were fired from two separate firearms did not transform this continuing offense into two separate offenses.  We disagree with the dissent's assumption that the fiancée was "potentially out of harm's way" when she sought refuge in a vehicle during the barrage of gunshots inasmuch as the vehicle was still in the vicinity of the gunshots.  "[R]eckless endangerment is a conduct-specific . . . crime," and here the conduct underlying that count of the indictment was the firing of multiple gunshots in the vicinity of the fiancée (*People v Estella*, 107 AD3d 1029, 1032, *lv denied* 21 NY3d 1042; *cf. People v Dann*, 17 AD3d 1152, 1153-1154, *lv denied* 5 NY3d 761).  We thus conclude that the indictment was not rendered duplicitous by the court's instruction that the jury could find defendant guilty of the assault and reckless endangerment charges if it found that defendant used either firearm or both.

We reject the view of the dissent that " 'there were two distinct shooting incidents' " (quoting *People v Boykins*, 85 AD3d 1554, 1555, *lv denied* 17 NY3d 814).  Although the published decision in *Boykins* does not address the particular facts of the crimes, "[w]e can and do take judicial notice of the record on appeal" in that case (*People v Hill*, 30 AD2d 976, 976; *see People v Crawford*, 55 AD3d 1335, 1337, *lv denied* 11 NY3d 896).  In *Boykins*, the defendant was charged with one count of attempted murder, but the evidence established that there were two distinct shooting incidents directed at the victim.  The first occurred when the defendant and the codefendant first arrived at the victim's residence.  At that point the victim was shot in the stomach area.  The defendant and the codefendant left the residence, and another resident of the home locked the door behind them.  At some time thereafter, either the defendant or the codefendant kicked open the door and shot the victim twice in the face.  Here, contrary to the factual scenario in *Boykins*, there was no cessation or suspension in the criminal activity other than the time it took defendant to obtain another loaded firearm.

Inasmuch as we conclude that the counts of the indictment were not rendered duplicitous by the court's instructions, we reject defendant's contention that he was denied effective assistance of counsel based on defense counsel's failure to seek dismissal of the allegedly duplicitous counts of the indictment (*see People v Stultz*, 2 NY3d 277, 287, *rearg denied* 3 NY3d 702; *People v Harris*, 97 AD3d 1111, 1111-1112, *lv denied* 19 NY3d 1026; *see also People v Brown*, 82 AD3d 1698, 1701, *lv denied* 17 NY3d 792).

Contrary to defendant's further contention, we conclude that the shell casings were properly admitted in evidence.  " 'The testimony presented at the trial sufficiently established the authenticity of that evidence through reasonable assurances of identity and unchanged condition' . . . , and any irregularities in the chain of custody went to the weight of the evidence rather than its admissibility" (*People v Washington*, 39 AD3d 1228, 1230, *lv denied* 9 NY3d 870; *see generally*

*People v Julian*, 41 NY2d 340, 342-343).

We conclude that the sentence is not unduly harsh or severe. Finally, we note that the certificate of conviction erroneously states that defendant was convicted of attempted murder in the second degree under Penal Law § 125.25 (2), and it must therefore be amended to reflect that he was convicted under Penal Law § 125.25 (1) (*see generally People v Saxton*, 32 AD3d 1286, 1286).

All concur except SCONIERS, J., who dissents and votes to modify in accordance with the following Memorandum: I respectfully dissent in part because I disagree with the majority that the assault and reckless endangerment counts in the indictment were not rendered duplicitous based on the evidence or by County Court's charge in response to a jury note. I would therefore modify the judgment by reversing the conviction of assault and reckless endangerment and dismissing the second and fourth counts of the indictment with leave to re-present any appropriate charges under those counts to another grand jury (*see generally People v Filer*, 97 AD3d 1095, 1096, *lv denied* 19 NY3d 1025). In view of my conclusion, I do not reach defendant's related contention concerning the denial of effective assistance of counsel.

The indictment alleged, inter alia, that defendant committed assault in the first degree (Penal Law § 120.10 [1]) and reckless endangerment in the first degree (§ 120.25) with "a .380 semi-automatic pistol and a .22 rifle," and the jury was instructed accordingly. During deliberations, the jurors sent a note that asked, with respect to both the assault and reckless endangerment counts, "must we believe both guns were involved and fired by the defendant." The court, in discussing the note with counsel, stated that the indictment alleged assault with a deadly weapon and not deadly weapons. As a result, the court subsequently instructed the jury that they could find that "either of the weapons were involved or both, as long as you find that there was a deadly weapon involved."

With respect to the assault count, this was not a case of a "single, uninterrupted criminal act" (*People v Alonzo*, 16 NY3d 267, 270); rather, defendant engaged in "two distinct shooting incidents that may constitute the crime of [assault]" with two separate weapons, the first of which was interrupted when he returned to his vehicle to retrieve a rifle (*People v Boykins*, 85 AD3d 1554, 1555, *lv denied* 17 NY3d 814; *see generally People v Casado*, 99 AD3d 1208, 1209, *lv denied* 20 NY3d 985). It is the separate "impulses," not the time interval between the acts, that is dispositive in this case (*see People v Okafore*, 72 NY2d 81, 87-88). Here, defendant used the pistol during the course of a fist fight between the victim, defendant's passenger, and defendant, after the victim began to get the upper hand. The victim's fiancée was pushing him back toward their sports utility vehicle (SUV) when defendant fired the last shot from the pistol. Following that initial altercation, after any perceived threat posed by the victim had seemingly subsided, and after defendant stated that he was not afraid to use the pistol, defendant returned to his vehicle, retrieved a rifle from the back seat, and began firing in an

apparent attempt to end the victim's life (*see Boykins*, 85 AD3d at 1555). Defendant acted on those separate impulses with an "abeyance" between them (*People v Hines*, 39 AD3d 968, 970, *lv denied* 9 NY3d 876). Given the evidence at trial and the court's instruction in response to the jury note about the two weapons, the assault count was rendered duplicitous. "In addition, because the trial evidence establishes two distinct acts that may constitute [assault in the first degree], '[i]t is impossible to ascertain . . . whether different jurors convicted defendant based on different acts' " (*Boykins*, 85 AD3d at 1555).

Reckless endangerment can be a "continuing offense" (*People v Hernandez*, 235 AD2d 367, 368, *lv denied* 89 NY2d 1012) and, for reckless endangerment in the first degree, "the element of depravity can be alleged by establishing that defendant engaged in a course of conduct over a period of time" (*People v Bauman*, 12 NY3d 152, 155). Nevertheless, the conduct that allegedly created a grave risk of death must be specific enough to ensure a unanimous jury verdict (*see id.*; *People v Estella*, 107 AD3d 1029, 1031-1032, *lv denied* 21 NY3d 1042). Here, the testimony was that the victim's fiancée was in front of the victim when defendant fired the pistol but was able to get into the SUV, and potentially out of harm's way, when defendant retrieved and fired the rifle. There was one count and one victim, but two acts, with a seemingly greater risk of death involved with the use of the pistol. Given the court's response to the jury note, it is not possible to know whether the jurors, individually or collectively, based their verdict upon the use of the pistol, the rifle, or both. Based on defendant's break to retrieve the rifle, the fiancée's coinciding change of location, and the court's amendment of the indictment (*see Bauman*, 12 NY3d at 155), and "because of the danger that [the] jury . . . vote[d] to convict on a count without having reached a unanimous verdict" (*People v First Meridian Planning Corp.*, 86 NY2d 608, 615), the reckless endangerment count was rendered duplicitous.

Finally, the court failed to mitigate the danger that defendant was convicted on a less than unanimous verdict by neglecting to instruct the jury that they all must agree on the act or acts by which defendant injured the victim with a deadly weapon and created a grave risk of death to the victim's fiancée (*see generally People v Bradford*, 61 AD3d 1419, 1420-1421, *affd* 15 NY3d 329; *First Meridian Planning Corp.*, 86 NY2d at 616).

Entered: November 8, 2013                        Frances E. Cafarell
                                                 Clerk of the Court